UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PAUL BERNARD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:16-cv-00042-JAW |
| | ) | |
| TOWN OF LEBANON, MAINE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**

A former paramedic student has brought suit against a municipality, alleging that the municipality violated his procedural due process rights when the chief of the municipality's rescue department publicly associated him with an investigation into missing fentanyl. The former paramedic student asserts that as a result of the defamatory statement, he was dismissed from the paramedic program at his community college, and that his career as an EMT and future paramedic has been destroyed. In addition to the procedural due process claim, the former paramedic student also asserts a standalone claim for punitive damages.

The municipality moves to dismiss for failure to state a claim. The Court dismisses the procedural due process claim because the former paramedic student has not shown that the chief was involved in the community college's decision to dismiss the former paramedic student, and because the burdens on the student's future employment prospects, without more, are not constitutionally cognizable injuries. Furthermore, the Court dismisses the punitive damages claim because

punitive damages are a remedy, not a standalone count. However, the Court grants the student fourteen days to file a motion for leave to amend his complaint with a properly framed amended pleading.

## I.    BACKGROUND

### A.    Procedural History

On January 26, 2016, Paul Bernard, Jr., filed a complaint against the town of Lebanon, Maine (Town). *Compl.* (ECF No. 1) (*Compl.*). On March 10, 2016, the Town filed a motion to dismiss for failure to state a claim. *Def. Town's Mot. to Dismiss Pl.'s Compl.* (ECF No. 4). Mr. Bernard responded on March 23, 2016. *Obj. of Pl. Paul Bernard, Jr. to the Def. Town of Lebanon's Mot. to Dismiss Pl.'s Compl.* (ECF No. 5). In the final sentence of his response, Mr. Bernard moved for leave to amend his complaint "to include a Due Process claim pursuant to 42 U.S.C. § 1983." *Id.* at 11; *Mot. to Amend Compl.* (ECF No. 6). The Town replied to Mr. Bernard's response on April 5, 2016. *Def. Town's Reply to Pl.'s Resp. to the Town's Mot. to Dismiss Pl.'s Compl.* (ECF No. 8).

On July 22, 2016, the Magistrate Judge issued a recommended decision in which he recommended that the Court grant Mr. Bernard's motion to amend the complaint. *Recommended Decision on Mot. to Dismiss and Mot. to Amend* at 1 (ECF No. 9) (*Recommended Decision*). On August 15, 2016, the Court adopted the Magistrate Judge's recommendation without objection and permitted Mr. Bernard ten days to file an amended complaint, following which the Court would deny the Town's motion to dismiss, but failing which the Court would grant the motion with

2

prejudice. *Order Affirming the Recommended Decision of the Magistrate Judge* at 1 (ECF No. 10) (*Order*). Mr. Bernard filed an amended complaint on August 23, 2016, *First Am. Compl.* (ECF No. 11) (*Am. Compl.*), and the Court denied the Town's motion to dismiss the same day. *Order Den. Mot. to Dismiss for Failure to State a Claim* (ECF No. 12).

On September 13, 2016, the Town filed a motion to dismiss Mr. Bernard's amended complaint. *Def. Town's Mot. to Dismiss Pl.'s Am. Compl.* (ECF No. 13) (*Def.'s Mot.*). On September 22, 2016, Mr. Bernard filed a response. *Obj. of Pl. Paul Bernard Jr. to the Def. Town of Lebanon's Mot. to Dismiss Pl.'s Am. Compl.* (ECF No. 14) (*Pl.'s Resp.*). The Town replied on October 6, 2016. *Def. Town's Reply to Pl.'s Obj. to Town's Mot. to Dismiss Pl.'s Am. Compl.* (ECF No. 15) (*Def.'s Reply*).

### B.   The Alleged Facts[1]

Paul Bernard, Jr., is a resident of Dover, New Hampshire. *Am. Compl.* ¶ 1. Mr. Bernard became an EMT in 2008. *Id.* ¶ 7. In September 2012, Mr. Bernard began attending Northern Essex Community College (NECC) in Massachusetts to become a paramedic. *Id.* Mr. Bernard started a field internship with Cataldo Ambulance, a Massachusetts company, in December 2013. *Id.* ¶ 8. In January 2014, Mr. Bernard went on a Cataldo Ambulance call during which a patient was administered an entire pre-filled syringe (2 mg) of Narcan. *Id.* ¶ 9. After transporting

---

[1]      In considering a motion to dismiss, a court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff []." *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001)).

the patient to the hospital, Mr. Bernard's supervisor asked if Mr. Bernard wanted to keep the empty vial of Narcan for training purposes. *Id.* ¶ 10. Mr. Bernard replied, "Yes, as long as it's okay," and the supervisor gave him the empty vial. *Id.*

On about January 28, 2014, Mr. Bernard had a telephone conversation with Mario Stefano, an employee of the Lebanon Rescue Department. *Id.* ¶ 11. Mr. Bernard had been working as an EMT for the Lebanon Rescue Department since August 2013. *Id.* The conversation revolved around another employee and possible missing Fentanyl—a matter that Mr. Bernard alleges had nothing to do with him. *Id.* During the conversation, it came up that the other employee possessed empty vials, and Mr. Stefano opined that this was illegal. *Id.* Mr. Bernard immediately told Mr. Stefano about the Narcan vial that his supervisor at Cataldo Ambulance permitted him to keep for training. *Id.* Mr. Bernard stated he did not believe it was illegal to possess the empty vial but that he would nevertheless discard the vial the following day, which he did. *Id.*

Mr. Bernard alleges that Lebanon Rescue Chief Raymond Parent then ordered Mr. Stefano to call Cataldo Ambulance regarding Mr. Bernard. *Id.* ¶ 12. On January 29, 2014, Mr. Bernard received a call from the Clinical Director of Cataldo Ambulance informing him that he was being suspended due to an "ongoing investigation" but did not refer to the empty vial. *Id.* ¶ 13. Later that day, Rory Putnam, Mr. Bernard's Clinical Advisor at NECC asked Mr. Bernard, "What's going on in Lebanon?" *Id.* Mr. Bernard responded that he did not know what Mr. Putnam was talking about. *Id.* Mr. Putnam informed Mr. Bernard that there was a "fentanyl investigation" and that

4

someone from the Lebanon Rescue Department had called Cataldo Ambulance and said that Mr. Bernard was being investigated for fentanyl and the vial.  *Id.*

Mr. Bernard alleges that he has never been the subject of a fentanyl investigation.  *Id.* ¶ 14.  Further, Mr. Bernard asserts that as a result of the Lebanon Rescue Department's communication with Cataldo Ambulence, he was dismissed from the paramedic program at NECC and his career as an EMT and future paramedic has been effectively destroyed.  *Id.*

### C.  Counts in the Amended Complaint

In Count I, Mr. Bernard asserts:

> Defendant, Town of Lebanon, through its duly authorized agents, engage[d] in conduct . . . that directly deprived Plaintiff of his constitutional due process rights not only through their own individual acts and conduct, but by setting in motion a series of acts by others which Defendant knew, or reasonably should have known, would cause Plaintiff to be deprived of his constitutional rights of due process and would result in his losing his career and livelihood and to suffer other direct and consequential damages.

*Id.* ¶ 19.  Specifically, Mr. Bernard alleges that the Town, through its agents, made defamatory statements to Cataldo Ambulance that culminated in his dismissal from the paramedic program at NECC.  *Id.* ¶¶ 12, 14, 16.   Mr. Bernard states that the Town's conduct resulted in damage to his reputation, the loss of his career, a loss of income and earning capacity, emotional distress, attorney's fees, and other direct and consequential damages.  *Id.* ¶¶ 16, 19–21.

In Count II, Mr. Bernard asserts that the Town's conduct was "motivated by ill will" or that its conduct was "so outrageous that malice toward [Mr. Bernard] can be implied."  *Id.* at 23.  Consequently, Mr. Bernard states that he is entitled to an

5

award of punitive damages. *Id.* ¶¶ 22–24. The Town seeks dismissal of both counts in Mr. Bernard's Amended Complaint. *Def.'s Mot.* at 1.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Towmbly*, 550 U.S. 544, 555 (2007)). Rather, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Although a court must accept as true the factual matter contained in the complaint, the court is "not bound to credit 'bald assertions, unsupportable conclusions, and opprobrious epithets.'" *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 64 (1st Cir. 2004)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

6

do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The First Circuit summarized the proper analytic path in *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012):

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.  Step two: take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.

*Id.* at 55 (internal citations omitted).

## III.   DISCUSSION

### A.   Procedural Due Process

In evaluating a procedural due process claim under the Fourteenth Amendment, the Court must determine "whether [the plaintiff] was deprived of a protected interest, and, if so, what process was his due."  *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (alteration in original)).  Accordingly, "[t]o establish a procedural due process violation, the plaintiff must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.  *Id.* (quoting *Gonzelez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011) (internal quotation marks omitted) (alterations in original)).  In other words, procedural due process claims require three distinct allegations: "(i) the existence of an interest that falls within the definition of either 'property' or 'liberty'; (ii) deprivation of that interest by a person acting under color of state law; (iii) without constitutionally

adequate process." *Temple v. Inhabitants of Belfast*, 30 F. Supp. 2d 60, 65 (D. Me. 1998); *N. Creek Farm, Inc. v. Inhabitants of Phippsburg*, No. 08-43-P-S, 2009 U.S. Dist. LEXIS 1469, *43–44 (D. Me. Jan. 8, 2009), *aff'd* 2009 U.S. Dist. LEXIS 8970 (D. Me. Feb. 6, 2009).

In its motion to dismiss, the Town first argues that Mr. Bernard cannot make out a procedural due process claim against the Town in connection with his employment as an EMT with the Town's Rescue Department. *Def.'s Mot.* at 5. The Town asserts that Mr. Bernard has failed to allege that his employment at the Lebanon Rescue Department is a protected property interest. *Id.* Additionally, the Town points out that there is no indication that Mr. Bernard ever lost his job as an EMT with the Lebanon Rescue Department. *Id.* Because there is no allegation that the Town deprived Mr. Bernard of his employment with the Department, the Town argues Mr. Bernard has failed to assert a procedural due process violation. *Id.* (citing *Temple*, 30 F. Supp. 2d at 65 ). Turning next to Mr. Bernard's dismissal from the paramedic program at NECC, the Town argues that the decision of a community college in Massachusetts to remove Mr. Bernard from its paramedic program cannot form the basis of a procedural due process claim against the Town. *Id.*

Mr. Bernard's response does not engage the Town's arguments. Rather, Mr. Bernard simply reiterates that the Town employed Mr. Bernard and insists that "as a result of [the Town's] violation of [Mr. Bernard's] constitutional due process rights, [Mr. Bernard] lost his livelihood, his career, and suffered economic damages, all of which are property rights." *Pl.'s Resp.* at 3. However, Mr. Bernard offers no

argument and cites no case law in support of his conclusion that the Town violated his procedural due process rights.

As far as the Court can tell from the face of his Amended Complaint, Mr. Bernard alleges that the Town violated his procedural due process rights when Lebanon Rescue Chief Parent ordered Mr. Stefano to contact Cataldo Ambulance and to provide the ambulance company with allegedly false information regarding Mr. Bernard's involvement with an ongoing fentanyl investigation. *Am. Compl.* ¶¶ 11–13. Mr. Bernard asserts that "due to the defamation perpetrated by agents and employees of the Town of Lebanon," *id.* ¶ 14, Mr. Bernard suffered "damage to his reputation." *Id.* ¶ 16. Further, Mr. Bernard alleges that based on the defamatory statement, Mr. Bernard was dismissed from NECC's paramedic program and that his career as an EMT and future paramedic "has been effectively destroyed." *Id.* ¶ 14.

Although he does not label it as such, Mr. Bernard essentially advances a so-called "stigma plus" claim. In *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), the Supreme Court held that an individual has a protectable due process interest in his or her reputation. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437. However, the Supreme Court subsequently clarified that a due process claim cannot rest upon reputational harm alone. *See Paul v. Davis*, 424 U.S. 693, 701–02 (1976). Rather, when a person alleges that he has suffered stigmatization at the hands of a government actor, he "must show an adverse effect on some interest more tangible than reputational harm." *Mead v. Independence*

9

*Ass'n*, 684 F.3d 226, 233 (1st Cir. 2012) (quoting *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 10 (1st Cir. 2011)).  That is, "the reputational injury must be accompanied by a change in the injured person's status or rights under substantive state or federal law."  *Id.*  (quoting *Silva v. Worden*, 130 F.3d 26, 32 (1st Cir. 1997)).  In other words, the plaintiff must satisfy a "stigma plus" standard.  *Id.* (citing *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 10 (1st Cir. 2011)).

In the present case, Mr. Bernard clearly satisfies the "stigma" prong.  It is a fair inference that an individual in the healthcare field who is accused of being linked to an investigation into prescription drug abuse faces stigmatization and serious reputational harm.  With respect to the "plus" prong, the Amended Complaint identifies two "more tangible" adverse effects that flowed from the allegedly defamatory statement: (1) Mr. Bernard's dismissal from NECC's paramedic program, and (2) the burdens on his future employment prospects.  The Court addresses these consequences in turn.

### 1.    Dismissal from NECC[2]

---

[2]    Although Mr. Bernard asserts that he was dismissed from the NECC paramedic program as a result of the alleged defamation, he has not alleged that he lost his employment as an EMT with the Lebanon Rescue Department.  Nor is it clear from his Amended Complaint whether Mr. Bernard lost his internship with Cataldo Ambulance.  Mr. Bernard's original Complaint, however, states that Mr. Bernard "was dismissed and/or suspended from both his field internship at Cataldo Ambulance and the Paramedic program and Northern Essex Community College . . . ."  *Compl.* ¶ 32.

Even if Cataldo Ambulance did dismiss Mr. Bernard as a result of the alleged defamation, Mr. Bernard cannot use the loss of his internship to satisfy the "stigma plus" standard because it appears that Cataldo Ambulance is a private employer.  In *Pendleton v. City of Haverhill*, 156 F.3d 57 (1st Cir. 1998), the First Circuit explained that "a violation of constitutional proportions under a stigma plus theory exists only if, and to the extent that, the opportunities lost are government benefices denied as a result of government action."  *Id.* at 63.  Although the government may regulate Cataldo Ambulance and provide it with some funding, there is no indication in the Amended Complaint that Cataldo Ambulance is a government employer for purposes of a procedural due process claim.  Therefore, Mr. Bernard may not base his procedural due process claim on the loss of his internship with Cataldo Ambulance.

To satisfy the "plus" prong of the "stigma plus" standard, Mr. Bernard must show that the government's alleged defamation was "accompanied by a change in [his] status or rights under substantive state or federal law." *Mead*, 684 F.3d at 233 (quoting *Silva v. Worden*, 130 F.3d at 32).   As an initial matter, Mr. Bernard's dismissal from the paramedic program at his community college constitutes a change in his rights under substantive state or federal law.   *See Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988) (holding that a student's interest in pursuing an education is included within the Fourteenth Amendment's protection of liberty and property, and thus a student facing expulsion or suspension from a public university is entitled to the protections of due process).

However, in order for a defendant to be liable under a "stigma plus" theory, the defendant must be responsible for both the reputational harm as well as the loss of the government benefit.   *See Johnson v. Collins*, Civil No. 02-531-B, 2004 U.S. Dist. LEXIS 806 at *16–17 (D.N.H. Jan. 23, 2004) (citing *Hawkins v. R.I. Lottery Comm'n*, 238 F.3d 112, 115 (1st Cir. 2001)).   For instance, in *Johnson*—a case factually similar to this one—a public high school student and his parents brought suit against a town and its police chief, claiming that that the police chief defamed the student by conducting a "public campaign" of false accusations that led to the student's expulsion.   *Id.* at *7–8.   The District of New Hampshire granted summary judgment in favor of the police chief and the town on the plaintiffs' "stigma plus" claim because the police chief did not participate in the school board's decision to expel the student. *Id.* at *16–17 (citing *Hawkins*, 238 F.3d 112, 115–16); *see also URI*, 631 F.3d at 10

11

("The [stigma plus] standard requires that the change in rights or status be *directly attributable* to the challenged governmental action. Where the stigma and the incremental harm—the 'plus' factor—derive from distinct sources, a party cannot make out a viable procedural due process claim") (emphasis added); *Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998) (holding that the plaintiff did not have a valid "plus" because the alleged defamation and the decision to terminate the plaintiff came from two separate, unrelated sources); *Mead*, 684 F.3d at 233 (same).

Here, there is no allegation that any of the agents of the Town, including Chief Parent or Mr. Stefano, were directly involved in the decision to remove Mr. Bernard from the NECC paramedic program. In fact, there is no indication that anyone from the Town communicated with NECC at all. Rather, Chief Parent instructed Mr. Stefano to contact Cataldo Ambulance, who then presumably notified NECC. *Am. Compl.* ¶ 12. Because there is no evidence that any agents of the Town were involved with the decision to dismiss Mr. Bernard from his educational program, First Circuit precedent establishes that Mr. Bernard is unable to satisfy the "plus" prong based on his dismissal from the NECC paramedic program. *See URI*, 631 F.3d at 10.

### 2.   Burdens on Employment Prospects

Mr. Bernard also alleges that due to the Town's defamatory statement to Cataldo Ambulance, his career as an EMT and future paramedic "has been effectively destroyed." *Id.* ¶ 14. However, Mr. Bernard's "plus" cannot be "the imposition of tangible burdens on [his] future employment prospects." *Mead*, 684 F.3d at 235 (citing *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991) (holding that neither

reputational harm nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries)).

Some circuits hold that a plaintiff who faces stigmatization at the hands of the government may have a valid "plus" in cases where a statute—rather than mere reputational harm—impairs a plaintiff's employment prospects. *See Valmonte v. Bane*, 18 F.3d 992, 1001–02 (2nd Cir. 1994) (holding that a plaintiff who faced stigmatization when the government included her name on a registry of child abusers had a valid "plus" where a statute required potential employers to consult the registry before making any hires); *Humphries v. Cty. of Los Angeles*, 554 F.3d 1170, 1187–92 (9th Cir. 2009), *rev'd on other grounds*, *Los Angeles Cty. v. Humphries*, 562 U.S. 29 (2010) (holding that plaintiffs who faced stigmatization when the government included their names on a database of child abusers had a valid "plus" where a statute required state agencies to check the database before granting certain licenses). In the present case, however, Mr. Bernard does not allege that any statutory scheme prevents him from pursuing a career as an EMT or a paramedic as a result of Chief Parent and Mr. Stefano's alleged defamation. Accordingly, the Court concludes that Mr. Bernard is unable to satisfy the "plus" prong either by reference to his dismissal from the NECC paramedic program or to the burdens on his future employment. Because Mr. Bernard asserts no other grounds on which the Court can find a plausible procedural due process claim, the Court dismisses Count I of Mr. Bernard's complaint.

B. **Municipal Liability**

Notably, Mr. Bernard did not bring suit against Chief Parent or Mr. Stefano; rather, he filed suit only against the town of Lebanon.  Even assuming that Chief Parent and Mr. Stefano's conduct violated Mr. Bernard's procedural due process rights when they contacted Cataldo Ambulance and relayed the allegedly defamatory statements, it does not follow that the Town is necessarily liable as well.  "[M]unicipal liability is not vicarious."  *Estate of Bennett v. Wainwright*, 548 F.3d 155 (1st Cir. 2008); *see also Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 209 (1st Cir. 1990).  In order to succeed on a claim of municipal liability, a plaintiff must show (1) that the municipality adopted a policy or custom that evidenced a "deliberate indifference" to the constitutional rights of its inhabitants, and (2) that this policy or custom was the cause of, and moving force behind, the plaintiff's alleged constitutional injury.  *See Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 769 (quoting *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008)); *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005); *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 14 (1st Cir. 1991).  Mr. Bernard makes no argument that the Town adopted a policy or custom that evidenced a deliberate indifference to the rights of its inhabitants, nor does Mr. Bernard allege any facts that suggest the existence of such a policy.  For this reason as well, the Court concludes that Mr. Bernard has failed to state a claim in Count I.

### C.    Punitive Damages

Count II of the Amended Complaint states a separate demand for punitive damages for the Town's alleged violations of Mr. Bernard's due process rights.  *Am. Compl.* ¶¶ 22–24.  However, "a claim for punitive damages 'is not a separate and distinct cause of action under Maine law.  Rather, it is a type of remedy." *Goldenson v. Steffens*, 802 F. Supp. 2d 240, 270 (D. Me. 2011) (quoting *Frank v. L.L. Bean, Inc.*, 352 F. Supp. 2d 8, 13 (D. Me. 2005)).  In other words, Mr. Bernard may attempt to secure a punitive damages remedy against the Town on Count I, but he may not assert a claim of punitive damages as a standalone cause of action.  The Court therefore dismisses Count II.[3]

### D.    Motion for Leave to File Motion to Amend the Complaint

In the final sentence of his response to the Town's original motion to dismiss, Mr. Bernard requested leave to amend his complaint "to include a Due Process claim pursuant to 42 U.S.C §1983." *Obj. of Pl. Paul Bernard, Jr. to the Def. Town of Lebanon's Mot. to Dismiss Pl.'s Compl.* at 11.  The Magistrate Judge explained, "In this court, a plaintiff seeking leave to amend a complaint should file a separate motion, which should include as an exhibit the proposed amended complaint." *Recommended Decision* at 1, n.1.  Despite Mr. Bernard's failure to observe the proper filing requirements, the Magistrate Judge nevertheless recommended that the Court

---

[3]        The Defendants also argue that Count II should be dismissed because punitive damages are not available under the Maine Tort Claims Act or 42 U.S.C. § 1983. *Defs.' Mot.* at 6–7. The Court does not reach this argument as Count II fails because standalone counts for punitive damages are not permissible. Furthermore, the issue may not be amenable to resolution by a motion to dismiss. *See e.g. McLain v. Milligan*, 847 F. Supp. 970, 981, n.13 (1994); *McCue v. City of Bangor*, No. 1:14-cv-00098-GZS, 2014 U.S. Dist. LEXIS 97980, at *4, n.3 (D. Me. June 13, 2014),

grant Mr. Bernard leave to amend his complaint. *Id.* at 5–6. The Magistrate Judge reasoned that the Court had not yet issued a scheduling order in the case, and consequently, the liberal standard of Federal Rule of Civil Procedure 15(a) applied— namely, that leave to amend should be "freely given when justice so requires." *Id.* (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11–12 (1st Cir. 2004)). The Court adopted the Magistrate Judge's recommendation and granted Mr. Bernard leave to amend his complaint. *Order* at 1.

Mr. Bernard filed an amended complaint, *Am. Compl.*, and the Town moved once again to dismiss. *Def.'s Mot.* As before, in final line of his response, Mr. Bernard requests "the opportunity to file a Motion for Leave to Amend Complaint to more specifically plead facts that set forth the prima facie elements for a cause of action for [a] violation of procedural due process rights." *Pl.'s Resp.* at 6 (separately docketed as *Mot. for Leave to File Mot. to Amend Compl.* (ECF No. 16)). However, Mr. Bernard does not need the Court's permission to file a motion for leave to amend his complaint. Therefore, the Court DISMISSES as moot Mr. Bernard's motion for leave to file a motion to amend the complaint.

As the Magistrate Judge previously made clear, a plaintiff seeking leave to amend a complaint should file a separate motion, which should include as an exhibit the proposed amended complaint. *Levitt v. Sonardyne, Inc.*, No. 2:12-cv-00032-JAW, 2012 U.S. Dist. LEXIS 154875, at *4 (D. Me. Oct. 29, 2012). A plaintiff may properly move for leave to amend the complaint at any time before the entry of judgment, even after a dismissal for failure to state a claim. *See U.S. ex rel. Ge v. Takeda Pharm.*

16

*Co.*, 737 F.3d 116, 128 (1st Cir. 2013) (citing *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)).

The purpose of submitting a separate motion along with the proposed amended complaint is to enable the Court to evaluate the nature of the proposed amendment and its sufficiency. *Levitt,* 2012 U.S. Dist. LEXIS 154875, at *4. Without more than the single sentence in Mr. Bernard's response, the Court is unable to determine whether to grant Mr. Bernard leave to amend his complaint. *See also Gray v. Evercore Restructuring LLC*, 544 F.3d 320, 327 (1st Cir. 2008) ("As [the plaintiff] failed to request leave to amend, the district court cannot be faulted for failing to grant such leave *sua sponte*"). Indeed, the Court has already given Mr. Bernard one opportunity to cure the defects of his Complaint, and granting further amendments without any justification risks prejudice not only to the Town, but also to its taxpayers who fund the ongoing litigation. *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should be "freely given" in the absence of, among other things, "repeated failure to cure deficiencies by amendments previously allowed" and "undue prejudice to the opposing party by virtue of allowance of the amendment").

If Mr. Bernard desires to amend his Complaint, he must set forth his justifications in a separate motion and attach his proposed amended complaint as an exhibit before the Court enters judgment. To give Mr. Bernard an opportunity to properly file his motion for leave to amend his complaint, the Court will withhold issuing final judgment for fourteen (14) days following this Order. If Mr. Bernard

17

fails to file a proper motion in this period, he will have waived his right to file a motion for leave to further amend his complaint.

## IV.   CONCLUSION

The Court GRANTS the Town of Lebanon's Motion to Dismiss Plaintiff's Amended Complaint.  (ECF No. 13).  The Court DISMISSES Counts I and II of Mr. Bernard's First Amended Complaint and Demand for Jury Trial (ECF No. 11).  The Court DISMISSES Mr. Bernard's motion for leave to file a motion to amend the complaint.  (ECF No. 16).  The Court withholds issuing final judgment for fourteen (14) days following this Order to give Mr. Bernard an opportunity to file a motion for leave to amend his amended complaint.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of April, 2017